IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JERRY LEE DARNELL                                                              PLAINTIFF

V.                                                    CIVIL ACTION NO.: 1:15CV131-SA-RP

BARRY STANFORD, ET AL.                                                      DEFENDANTS


## ORDER GRANTING SUMMARY JUDGMENT

Jerry Lee Darnell, a Mississippi inmate proceeding *pro se* and *in forma pauperis* in this action under 42 U.S.C. § 1983, alleges that he was denied medical care by Detention Supervisor Barry Stanford, Nurse Sara Rickit[1], and Jail Administrator Richard T. Jones ("Defendants") while housed at the Lowndes County Adult Detention Center. Defendants have moved for summary judgment, and Darnell has responded. Having reviewed the submissions and arguments of the parties, as well as the applicable law, the Court finds that Defendants' motion should be granted.

### Summary Judgment Standard

Summary judgment is proper only when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) &(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is deemed "material" if "its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). Once the motion is properly

---

[1] Nurse Rickit's actual name is "Sarah Rickert." *See, e.g.*, Doc. #62-1. The Court retains the spelling of Ms. Rickert's name as used by Darnell, however, to avoid confusion in the record.

supported with competent evidence, the nonmovant must show that summary judgment is inappropriate. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *see also Celotex*, 477 U.S. at 323. The nonmovant cannot rely upon "conclusory allegations, speculation, and unsubstantiated assertions" to satisfy his burden, but rather, must set forth specific facts showing the existence of a genuine issue as to every essential element of his claim. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (citation omitted); *Morris*, 144 F.3d at 380. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If no proof is presented, however, the Court does not assume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## Plaintiff's Allegations

Jerry Darnell had a right-eye corneal transplant at the Cincinnati Eye Institute on October 3, 2014, prior to his incarceration in this case. *See* Doc. #69 at 2-4; Doc. #67-6 at 82; *see also* Doc. #19 at 1:55-2:22. Darnell claims that he was scheduled to have stitches removed from his eye on February 3, 2015. By that time, however, he had been arrested and was in the custody of the Lowndes County Adult Detention Center ("Lowndes County"). He claims that a nurse at Lowndes County, Nurse Rickit, refused to allow him to see a physician to have the sutures removed. *See id.* at 7. Darnell filed a grievance about the alleged denial of medical care to Detention Supervisor Barry Stanford, who responded in writing that medical providers had advised him that the stitches had been in Darnell's eye too long to be removed safely. *Id*.

Darnell claims that he had to have two subsequent surgeries on his right eye because his stitches were not removed on schedule. He alleges that the first, on May 4, 2015, was a stent that

2

blinded him in his right eye, and the other was a surgery on June 11, 2015, to repair his retina. Darnell maintains that he might have retained eyesight in his right eye if he had been provided the necessary medical attention in a timely manner.

**Applicable Law**

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1978). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 839 (1994). In order to state a claim under § 1983 for deliberate indifference to an inmate's medical condition, the inmate must demonstrate that the prison official (1) knew that the inmate faced a substantial risk of serious harm; and (2) disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847.

The constitutional standard of "deliberate indifference" is a demanding one, and negligent conduct by a prison official does not give rise to a constitutional violation. *Daniels v. Williams*, 474 U.S. 327 (1986); *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990). Rather, liability under the deliberate indifference standard requires the plaintiff to produce evidence "that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Davidson v. Tex. Dept. of Crim. J.*, 91 F. App'x 963, 965 (5th Cir. 2004) (citation omitted); *see also Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (holding deliberate indifference requires inmate to show prison officials engaged in conduct that "clearly evince[s] a wanton disregard for any serious medical needs."

**Relevant Evidence**

Jerry Lee Darnell has been housed at the Lowndes County Adult Detention Center ("Lowndes County") on several occasions since July 2008. *See, e.g.*, Doc. #67-2 at 3-5. The information he provided for the "Booking Medical Sheet" during each stay at the facility demonstrates that he experienced problems with his right eye years before his corneal transplant in October of 2014. For instance, during a June 22, 2009, booking, he reported that he had undergone surgery on his right eye the previous Monday and stated that he had a corneal transplant in his right eye. Doc. #67-3 at 57-58. During an August 4, 2010, booking, Darnell reported that he was blind in his right eye. *Id*. at 55-56. On May 9, 2011, Darnell reported that his right eye had been hurting. *Id*. at 51-52. On November 16, 11, Darnell reported to a Lowndes County booking official that he was blind in his right eye. *Id*. at 47-48. During a booking on May 15, 2012, Darnell reported "issues" with his right eye, noting that he had been medically treated approximately a month prior for his eye condition and had been prescribed eye drops. *Id*. at 43-44. On March 22, 2014, Darnell reported that he was blind in his right eye and stated that he had undergone brain surgery in 1998. *Id*. at 41-42. On April 1, 2014, he reported a prior transplant in his right eye and stated that he had a "plate" in his right eye. *Id*. at 39-40. The fact of Darnell's prior transplant is confirmed in his Mississippi Department of Corrections ("MDOC") medical history, which notes that his October 2014 procedure was a second corneal transplant. *See* Doc. #67-6 at 115; *see also, e.g., id.* at 8, 28, 35, 48, 63, and 82.

Darnell was housed at Lowndes County for the first time following his 2014 corneal transplant from November 19, 2014, until December 2, 2014. *See* Doc. #67-2 at 5. As part of the "Booking Medical Sheet" that was created on November 19, 2014, Darnell reported that he had seen a physician the prior week for a surgery follow-up, noting that his "[r]ight eye is

damaged" and that he uses eye drops for his eye condition. *See* Doc. #67-3 at 38. Darnell was later transferred to an MDOC facility where on December 21, 2014, his eye medications were updated and a specialty consult to follow-up on Darnell's corneal transplant was ordered. *See* Doc. #67-6 at 107. A specialty optometry consult occurred on December 30, 2014, and the physician ordered that Darnell receive pred forte[2] drops to his right eye and provided Darnell with a bottle of the medication. *See* Doc. #67-6 at 114-15; 118. Darnell remained in an MDOC facility until his transport to Lowndes County on January 29, 2015. *See* Doc. #67-6 at 129-30; *see also* Doc. #67-3 at 3.

Darnell was again housed in Lowndes County for a temporary forty-one day return for court beginning January 29, 2015. *See* Doc. #62-1; Doc. #67-3 at 5. Immediately prior to his transfer to Lowndes County, Darnell's medications were refilled and he reported no new medical problems or injuries. Doc. #67-6 at 128-130. Darnell's MDOC records contain no order for suture removal upon his transfer. *See id.* at 129-132.

During his January 2015 booking at Lowndes County, Darnell reported that he had previously had a corneal transplant that gave him "issues at times" and for which he took "multiple unknown meds." Doc. #67-4 at 35-36. Darnell arrived with his medicated eye drops, which were given to him to keep in his cell. Doc. #62-1; *see also* Doc. #67-1 at 6 and Doc. #67-3 at 4.

In early and mid-February, 2015, Darnell requested earplugs, sleep medication, ibuprofen, and medication for his skin. Doc. #62-1. He was provided with antifungal cream, earplugs, triple antibiotic ointment, and ibuprofen. Doc. #62-1. On February 16, 2015, Darnell

---

[2] Pred forte is a corticosteriod that treats eye conditions due to inflammation or injury. *See* http://www.webmd.com/drugs/2/drug-8564/pred-forte-ophthalmic/details (last visited January 10, 2017).

complained that his right eye was infected, maintaining that he had stitches in his right eye. Doc. #67-1 at 4. According to Nurse Rickit, Darnell informed a member of the nursing staff that his follow-up eye appointment was in Cincinnati, Ohio, and was told, in accordance with standard procedure, that he would have to wait until his return to prison for follow-up care. Doc. #62-1. Nurse Rickit noted that the prison did not send any orders for stitches removal, which Lowndes County would have been unable to perform. *Id*. However, per physician's orders, Darnell was given ibuprofen 600 mg, twice per day, following his medical care request. Doc. #67-1 at 4; Doc. #62-1.

On March 12, 2015, Darnell completed an inmate request form that was directed to Defendant Lt. Barry Stanford. Doc. #67-3 at 1. The request states: "I have wrote several medical request forms asking to see an eye doctor concerning my right eye. I have stitched in my eye that were suppose to be removed last month (2-3-2015). I asked Sara [Rickit] about going to the Doctor, she refused me medical attention." *Id*. Stanford investigated the request and replied on March 13, 2015 that he had spoken with medical staff, stating: Darnell's "stitches . . . ha[ve] been in a year or longer. [Medical professionals] are unable to remove such safely after all that time." Doc. #62-2; *see also* Doc. #67-3 at 1.

Darnell was transferred from Lowndes County to the Central Mississippi Correctional Facility, an MDOC facility, later in March of 2015 and lodged a sick-call request to be "seen for stitches" in his right eye. Doc. #67-6 at 136. Darnell's eyes were examined, and it was noted that the right eye contained "noticeable color change with small fragments around Iris. . . no redness or drainage noted at this time, [Darnell] denies any visual changes." *Id.* at 138. The disposition was "routine." *Id*. at 138. Darnell was thereafter transferred to the South Mississippi Correctional Institution, another MDOC facility, at the end of March 2015, where he complained

6

on April 10, 2015, of right eye pain. Doc. #67-7 at 3. In response to his complaints, a plan was generated to administer ibuprofen and make a routine referral, which was accomplished on April 21, 2015, when Darnell was transported to the Southern Eye Center, prescribed sunglasses, and scheduled for a follow-up procedure in May. Doc. #67-7 at 6-15.

Darnell received treatment from the Southern Eye Center, a private facility in Hattiesburg, Mississippi, in May 2015. *See, e.g.*, Doc. #67-8. According to the diagnosis from that facility, Darnell has uncontrolled glaucoma in his right eye and had a procedure to attempt to improve his condition on May 4, 2015. *See* Doc. #67-8 at 78. Approximately one month after the procedure, Darnell reported that he could not see color in his right eye, and that his vision had worsened since the procedure. *Id*. at 63. In June of 2015, he had surgery to repair his right retina, and a third corneal transplant was performed on his right eye in October of 2015. *See id*. at 23 and 55.

**Discussion**

It is clear from the evidence presented to the Court that Darnell's problems with vision in his right eye began long before he was housed at Lowndes County in January of 2015. He complained of blindness in his right eye at that facility as early as 2010. Additionally, contrary to his statements to the Court that Defendants' lack of medical treatment caused him to be blind in his right eye, he indicated to medical providers at the Southern Eye Center in June of 2015 that he could not see "color" and that his vision had worsened in his right eye since the 2015 glaucoma surgery. Therefore, Darnell's claim that Defendants caused his eye injuries is not supported by the record.

The Court considers, however, Darnell's claim that Defendants (in)actions made his medical condition worse by refusing to provide him with suture removal. The Court finds that

7

there is no evidence in the record, aside from Darnell's unsubstantiated assertions, that he was scheduled to have a follow-up eye appointment in February 2015 to have stitches removed from his right eye. Moreover, prior to his arrival at Lowndes County at the end of January 2015, Darnell was prescribed medications and given an optometry exam. His medications were transported with him to Lowndes County, and he was allowed to keep the medications on his person. Therefore, the evidence supports a determination that Darnell received treatment at Lowndes County that was consistent with the treatment plan generated for his chronic medical condition prior to his arrival at the facility. His disagreement with the medical staff's decision to comply with the earlier treatment plan, even if that treatment was negligent, does not support an Eighth Amendment claim. *See, e.g., Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001) (holding disagreement with course of medical treatment will not support a claim of deliberate indifference); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (finding medical malpractice alone does not support §1983 cause of action).

Additionally, the medical staff at Lowndes County considered his request for stitch removal and investigated his complaints. Accordingly, even if the Court found that Darnell had stated the violation of a constitutional right, Defendants sought professional judgment in response to Darnell's grievance concerning the stitch removal, and they acted in an objectively reasonable manner in denying his request based on the judgment of medical professionals. *See, e.g., Lee v. Young*, 533 F.3d 505, 511 (7th Cir.2008) ("[I]n determining the best way to handle an inmate's medical needs, prison officials who are not medical professionals are entitled to rely on the opinions of medical professionals."); *Crumbley v. Dawson*, No. 9:09CV14, 2011 WL 917412, at *7 (E.D. Tex. Feb. 17, 2011) (finding that although plaintiff said he was "disabled" and would not perform work, "prison officials had no obligation to believe his account of his

medical condition over that of the medical professionals"). Therefore, Defendants are oentitled to qualified immunity.³ *See Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (noting evaluation of qualified immunity requires court to determine (1) whether a clearly established constitutional right would have been violated on the facts alleged, and (2) "whether the defendant's actions were objectively unreasonable in light of the clearly established law at the time of the conduct in question").

**Conclusion**

For the reasons set forth above, Defendants' motion for summary judgment [62] is **GRANTED**, and Defendants Barry Stanford, Sara Rickit, and Richard T. Jones are **DISMISSED WITH PREJUDICE** from this action. A separate final judgment will enter today.

**SO ORDERED** this the 11th day of January, 2017.

/s/ Sharion Aycock
**U.S. DISTRICT JUDGE**

---

³ The Court finds that Captain Richard Jones is additionally entitled to dismissal because he lacked any personal involvement in the medical care decisions at issue in this case. *See, e.g., Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (finding "[p]ersonal involvement is an essential element" of a § 1983 action) (citation omitted); *see also* Doc. #62-2.